[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This file was originally returned to the Judicial District of Middlesex on January 26, 1993. It was transferred to the Judicial District of Meriden on June 14, 1995. When the action was originally brought, the plaintiff the Connecticut National Bank sought to foreclose a mortgage on property of the defendant Charles A. Marland, known as 167-3 Elm Street in Old Saybrook, claiming an unpaid principal balance of $534,803.56, in default since May 15, 1991. After the return date the file reflects a series of assignments by the plaintiff The Connecticut National Bank and/or its assignees culminating in the presence of the present plaintiff The Cadle Company of Connecticut.
The defendant Charles Marland had been defaulted prior to the transfer to Meriden, but his estranged spouse, Susan Marland, remained a potential defendant. On February 25, 1993, the court had granted her motion that she be cited in as a defendant. Pending at the time of transfer was a motion for the appointment of a receiver and an application for a pre judgment remedy to secure a potential deficiency judgment against Charles Marland. Susan Marland claimed an interest in the realty but was not obligated on the note. Also pending was a motion for foreclosure by sale. This motion was filed in response to plaintiff's motion for judgment of strict foreclosure. The motion for judgment of strict foreclosure was denied by Judge Spallone on April 19, 1994 without pre justice, without prejudice.
After transfer to Meriden on June 14, 1995, new counsel appeared for Charles Marland and Susan Marland, the court having granted permission for Charles Marland's prior counsel to CT Page 1412-KK withdraw. Prior to September 25, 1995, Susan Marland had also been represented by this attorney.
Counsel for Charles Marland filed a motion to dismiss on October 3, 1995 (144) which the court denied. Counsel for the plaintiff amended his complaint to show the interest of Susan Marland alleging her interest originated in a quitclaim deed dated and recorded January 21, 1993. Counsel for Charles Marland moved on October 16, 1995 to strike the matter from the trial list. The court denied this motion.
On October 25, 1995 the plaintiff filed a demand for disclosure of defense against Susan Marland. She responded by filing an answer and four special defenses. Her answer put plaintiff to its proof on its complaint. In her first special defense Susan Marland alleged that plaintiff and the predecessors had interminably delayed this action substantially prejudicing her and asked the court for equitable relief. Her second special defense asserted that because of the delay the equitable doctrine of laches should be applied to deny the plaintiff some or all of the relief being sought. In her third special defense Susan Marland claimed plaintiff breached an agreement it had with her co-owner whereby the action would be resolved. Susan Marland asserts without that such a breach justified equitable intervention by the court.
In her fourth special defense, Susan Marland reiterated her third special defense and alleged bad faith on the part of plaintiff after purchasing the subject note and mortgage at a substantial discount. Because of this Susan Marland seeks an equitable recoupment or setoff against any debt allegedly due plaintiff again asserting equitable principles.
The plaintiff's reply denied all four of Susan Marland's special defenses.
The case went to trial in December of 1995 along with a companion case involving the same parties. Subsequently the court determined it would decide this case CV95-0249405 and reserve decision on CV95-02459406. Both defendant were represented by counsel who vigorously prosecuted their theories of defense.
The plaintiff's complaint had been amended on October 27, 1995 to show the interest of defendant Susan Marland. Paragraph 7 alleged that "On Jan 21, 1993 the defendant Charles Marland CT Page 1412-LL transferred by quitclaim to defendant Charles Marland defendant Susan Marland all of his interest in the premises, which quitclaim deed is dated and recorded Jan. 21, 1993 in Volume 302 at page 388 of the Old Saybrook land Records."
As noted earlier Susan Marland filed an answer and special defenses to this amended complaint. Although Charles Marland was defaulted, he contested the essential allegations of the complaint putting plaintiff to his proof of the note, the mortgage, the unpaid principal balance, the default, the demand and the chain of title of the present plaintiff, the Cadle Company of Connecticut. The court is satisfied that the plaintiff has successfully proved the allegations of its complaint by a fair preponderance of the evidence. By way of documentary proof, the plaintiff offered and the court admitted the following exhibits:
(Exhibit B) Open end mortgage deed dated 15 August 1988 between Charles A. Marland mortgagor and the mortgagee, Chester Bank, mortgaging 167-3 Elm Street, Old Saybrook, Connecticut, on the condition that the borrower is justly indebted to the lender in the sum of $560,000.00;
(Exhibit C) Variable Interest Rate Commercial Note dated August 15, 1988 wherein Charles A. Marland promised to pay the Chester Bank $560,000 secured by a mortgage of even date on 167-3 Elm Street, Old Saybrook, Connecticut.
(Exhibit D) Certificate of Merger of Chester Bank with and into the Connecticut National Bank on November 3, 1990.
(Exhibit E) Certificate of Name Change of Connecticut National Bank to Shawmut Bank, Connecticut, Nat'l. Association, dated January 11, 1993.
(Exhibit F) Assignment of Mortgage dated January 27, 1993, by Shawmut Bank Connecticut, National Association to GTT Corp., as Trustee of Onyx Properties Realty Trust of mortgage from Charles A. Marland to Chester Bank dated August 15, 1988 and recorded in Old Saybrook land records in Vol. 260, page 466, together with the Note evidencing the indebtedness. Included in this document is a statement to with: "Shawmut hereby represents and warrants that it is the holder and owner of the mortgage, the Note and the loan documents and has full power and right to assign the same; CT Page 1412-MM
(Exhibit G) Assignment of Mortgage dated February 18, 1994 by GTT Corp., as trustee of Onyx Properties Realty Trust to the Cadle Company of Connecticut, the mortgage dated August 15, 1988 from Charles A. Marland to Chester Bank, recorded in Old Saybrook, Connecticut land records at Volume 260, page 466, together with the Note evidencing the indebtedness secured thereby;
Court Exhibit (1) Agreement dated February 18, 1994 for Purchase and Sale of Notes and loan documents by and between Shawmut Bank Connecticut, N.A. the seller and The Cadle Company buyer involving a package of Notes secured by mortgages including the Marland loan and mortgage recorded in Old Saybrook land records, Vol. 260, page 466.
These documents satisfy the court that the present plaintiff the Cadle Company of Connecticut is the owner and holder of the note evidencing the debt and the mortgage securing the debt and thus has the appropriate standing to proceed with this action.
The court is satisfied that this note and mortgage were in default as of October 28, 1992 that said default was not cured by December 4, 1992, that subsequent to December 4, 1992, the Connecticut National Bank commenced this foreclosure on January 12, 1993, at which time the principal balance on the Note was $534,803.56, (Exh. 1). On November 10, 1992 the defendant acknowledged he was in default on this loan (Exh. J). The testimony of Mr. Douglas Mainero credited by the court was to the effect that he checked the principal balance due from Mr. Marland before preparing the agreement for Purchase and Sale of Notes and Loan Documents to Cadle and ascertained that it was $534,803.56. Mainero was supervising this loan prior to the sale. He also testified that he checked the computer records prior to testifying in December 1995 and confirmed this figure. The testimony of Nicholas Mydinski supported the accuracy of the computer records. Charles Marland did not testify. Susan Marland's testimony verified his signature on the note and mortgage and acknowledged that the note was in default.
The defendants allege that the long delay between January 26, 1993 and December of 1995 was caused by the plaintiffs.
Defendants allude to the fact that plaintiffs changed counsel three times during this period. Plaintiffs argue the delay CT Page 1412-NN resulted from the fact that Charles Marland interposed various defenses to this action. Defendants contend that the delay caused or accelerated the deterioration in the value of the subject property. The parties' appraisal reflects a wide disagreement over the contemporary value of the property Exhibit A, the plaintiff's appraisal estimates a value of $443,000 as of February 10, 1995. Exhibit 1, the defendant's appraisal estimates a value of $670,000. The subject property had an assessed value on October 1, 1989 shortly after the August 1988 mortgage of $530,040. At 70 percent of October 1, 1989 values the property would have had a fair market value of $757,200 on that date. No evidence was offered to the court as to the fair market value of the property in January of 1993, the date this action commenced.
Susan Marland offered testimony on all four of her special defenses, the first two special defenses are predicated on the delay in prosecuting the claim. There is some merit to her claim inasmuch as the plaintiffs failed to cite her in as a defendant for almost two years despite a court order. Susan Marland's third special defense alleges an agreement with her husband at some unspecified time. The court cannot credit her testimony on this defense.
Both defendants allege bad faith on the part of the plaintiff The Cadle Company after purchasing the subject note and mortgage for apparently a substantial discount. Cadle paid $2,400,000, for a package of notes and mortgages on February 18, 1994. The package included the subject note and mortgage. Marland's note had outstanding principal at the time of $534,803.56. The agreement lists notes with outstanding principal totaling $19,456,491.16. Defendants argue that on a pro rata basis the purchase of the subject note and mortgage was about twelve cents on the dollar and characterize plaintiff as a speculator in the pejorative sense. They ask the court sitting in equity to assess the conduct and interest of Cadle and others in the chain of title to determine whether the plaintiff has the clean hands expected in an equitable proceeding.
The court cannot determine the exact price Cadle paid for this note and mortgage from the evidence at hand. The court knows nothing of the risk involved in liquidating the loans of this character. Accordingly the court is wary of exercising its discretion on the basis of what appears to be a very substantial discount. CT Page 1412-OO
Both appraisers and Mrs. Marland offered testimony of a regional recession and a resulting deflation of real estate value. This testimony tends to corroborate the discrepancy between the municipalities' opinion of fair market value and the testimony of the appraisers. In addition it appears from testimony and from Exhibit J that the defendant Charles Marland suffered a fire loss on adjacent property, Lot 3, a property in which the Connecticut National Bank had a security interest. This loss and the apparent delay in obtaining fire insurance proceeds aggravated Marland's financial condition. Susan Marland's testimony that some part of this delay resulted from a lack of cooperation on the part of the bank is given some credit by the court.
These reasons permit the court to exercise its equitable discretion to limit the plaintiff's debt to the outstanding principal due when the plaintiff acquired this loan and mortgage, $534,803.56.
The subject property has a land area of 1.60 acres and is improved with two one-story metal mini-warehouse storage buildings known as the Saybrook Mini Warehouse System with rental area of 25,688 square feet allocated to 180 units. The highest and best use of the site as improved is its present use as a mini-warehouse storage facility.
Plaintiff's appraisal documented two approaches to value: the cost approach suggested a value of $478,284, and an income approach to value using a discounted cash flow methodology with a five-year holding period. This approach suggested a value of $443,000, which was relied upon by the appraiser as the fair market value as of February 10, 1995.
Defendants' appraiser utilized two approaches to obtain the fair market value of the subject property.
Using the cost approach, he achieved a value of $655,000.
Using the income capitalization approach with a discounted cash flow analysis, over a longer period of time, the appraiser achieved a value of $670,000. Defendants' appraiser's final estimate of the fair market value of the property as of May 30, 1995 was $670,000. CT Page 1412-PP
After reviewing these appraisals in detail and weighing the arguments and memoranda of counsel, the court concludes that the value of the subject property as of December 1995 is $561,000.
A judgment of strict foreclosure may enter. The court designates April 1, 1996 as the law date for Charles A. Marland and Susan Marland with subsequent date in inverse order or subsequent encumbrances.
The court will allow a title search fee of $150, an attorney's fee of $4,115, and an appraisal fee of $1200 for plaintiff's appraiser.
Dorsey, J. State Trial Referee